**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| COSHIRA ENGLISH, DAWN WASHINGTON, OTIS CHILDS, and LATESSA LEROGAN-WASHINGTON, on behalf of themselves and all other persons similarly situated, known and unknown,<br>    Plaintiffs,<br><br>v.<br><br>EYM CHICKEN OF ILLINOIS, LLC,<br>    Defendant. | Case No. 22-cv-3202 |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendant EYM Chicken of Illinois, LLC's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to Stay the Action and Compel Arbitration. (Doc. 13).

**I.     FACTUAL BACKGROUND**

This case was initially filed in the Circuit Court of the Seventh Judicial Circuit, Sangamon County, Illinois, before being removed to this Court under 28 U.S.C. §§ 1332(a) and 1441(a) by Defendant. (Doc. 1). Plaintiffs Coshira English, Dawn Washington, Otis Childs, and Latessa Lerogan-Washington filed a proposed class action complaint asserting claims for violations of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.* (Doc. 1-1). Plaintiffs are current or former employees of Defendant EYM Chicken of Illinois, which owns and operates at least 20 KFC franchises in Illinois. (*Id.* at

19-22). In seeking dismissal or requesting arbitration, Defendant alleges that as part of their employment agreement, Plaintiffs entered into agreements to submit claims arising out of their employment, such as the claims asserted in the complaint, to binding arbitration. (Doc. 14 at 1). The purported arbitration agreements as to each Plaintiff are attached to Defendant's motion. (Doc. 14-2). Defendant further asserts Plaintiffs agreed to adjudicate any employment-related claim in the arbitration process individually, and not as part of a class. (*Id.*) Attached as an exhibit to Defendant's motion are documents purporting to be Plaintiffs' electronic signatures on their Election and Arbitration Agreements, as follows: (1) Coshira English dated January 27, 2021 (Doc. 14-2 at 1); (2) Dawn Washington on August 11, 2022 (*Id.* at 7); (3) Latessa Washington on May 28, 2020 (*Id.* at 13); and (4) Otis Childs on May 12, 2020 (*Id.* at 19).

Because they allege a federal court is an improper venue to adjudicate these claims, Defendant seeks dismissal for lack of venue under Rule 12(b)(3), along with the dismissal of the class allegations. (Doc. 14 at 1-2). Alternatively, Defendants request that the matter be stayed and arbitration be compelled consistent with Plaintiffs' employment agreements. (*Id.* at 2).

Plaintiffs oppose Defendant's motion on the basis that Plaintiffs Coshira English and Dawn Washington deny signing, electronically or by any other means, the agreements in question. (Doc. 15 at 1-2). Plaintiffs contend (1) there is no enforceable arbitration agreement between the parties; and (2) the purported electronic signatures on the agreements do not comply with the Uniform Electronic Signature Act, 815 ILCS 333/1 *et seq*. (*Id.* at 2).

## II.    DISCUSSION

Defendant states that a motion to dismiss pursuant to a contractual arbitration clause is appropriately considered as an objection to venue and should be raised under Rule 12(b)(3). Since Defendant filed its motion, however, the Seventh Circuit has stated that a motion under Rule 12(b)(3) is not the proper means of enforcing an arbitration agreement. *Rodgers-Rouzier v. American Queen Steamboat Operating Co., LLC,* 104 F.4th 978, 984 (7th Cir. 2024). "Venue is determined solely by reference to federal law—generally 28 U.S.C. § 1391—not the parties' contractual agreements." *Id.* (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,* 571 U.S. 49, 55-56 (2013)). Because the Court has no basis to dismiss the action for lack of venue, the Court will consider Defendant's submission as a motion to stay the action and compel arbitration.

Section 4 of the Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

The FAA was enacted in 1925 and was designed to replace the hostility of courts to the enforcement of arbitration agreements with a "liberal policy favoring arbitration." *Wallace v. Grubhub Holdings, Inc.,* 970 F.3d 798, 799-800 (7th Cir. 2020). Under the FAA,

unless the parties have provided otherwise, federal courts determine whether a dispute is one that the parties intended to arbitrate. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). A party cannot be required to submit to arbitration unless he has agreed to submit the dispute to arbitration. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019). In determining whether the parties agreed to arbitrate their claims, a court looks at the intent of the parties at the time the contract was executed. *Am. United Logistics, Inc. v. Catellus Development Corp.*, 319 F.3d 921, 929 (7th Cir. 2003). Arbitration agreements must be treated like other contracts and are rigorously enforced according to their terms. *Johnson v. Mitek Sys. Inc.*, 55 F.4th 1122, 1124 (7th Cir. 2022); *Wallace*, 970 F.3d at 800. "Courts cannot disfavor arbitration, compared with other agreements, but neither may courts jigger the rules to promote arbitration." *Id.* at 1124.

The FAA does not indicate the evidentiary standard that a party seeking to avoid compelled arbitration must meet. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). However, courts have compared it to the standard that a party opposing summary judgment must meet. *Id.* Therefore, the plaintiff must show there is a genuine issue of material fact warranting trial. *Id.*

Defendant states that, as consideration for their employment, each Plaintiff entered into an Election and Arbitration Agreement. The alleged agreement as to Plaintiff English stated in relevant part:

### Election and Arbitration Agreement

By signing this Election and Arbitration Agreement (hereinafter "Agreement"), I, employee of the Company, agree to the following:

**a) Mutual Promises to Resolve Claims by Binding Arbitration:**
I recognize that disputes may arise between the Company . . . and me during or after my employment with the Company. I understand and agree that any and all such disputes that cannot first be resolved through Company's internal dispute resolution procedures or mediation must be submitted to binding arbitration. As a consideration of employment, I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all of the claims covered by this This Agreement to resolve claims by arbitration is mutually binding upon both me and the Company. . . .

**b) Claims Subject to Arbitration: Claims and disputes covered by this agreement include:**

**All claims and disputes that I may now have or may in the future have against the Company . . .;**

**Nothing in this Agreement to Arbitrate shall prohibit me from filing, participating in, or pursuing action with an administrative agency in accordance with applicable law . . . or the filing of a workers' compensation claim or unemployment claim with an applicable state agency.**

**Claims for a violation of any federal, state or other governmental law, statute, regulation or ordinance; . . .**

The Company on behalf of itself and its parents and affiliates, officers and directors (collectively, The Company and I agree to use binding arbitration, instead of going to court, for any claims, including any claims now in existence or that may exist in the future (a) that I may have against The Company. . . . This Agreement to Arbitrate shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The Company will pay the arbitrator's fees; (b) The Company will pay the arbitration filing fee; and as discussed below, the arbitration shall occur only as an individual action and not as a class, collective . . . or consolidated action. . . .

I am an employee of The Company and I am not an employee or joint employee of any other entity in connection with my work as an employee of The Company. The Company and I agree that any and all claims subject to arbitration under this Agreement to Arbitrate may be instituted and arbitrated only in an individual capacity, and not on behalf of or as part of any purported class, collective, representative . . . or consolidated action (collectively referred to in this Agreement to Arbitrate as a "Class Action").

Furthermore, The Company and I agree that neither party can initiate a Class Action in court or in arbitration in order to pursue any claims that are subject to arbitration under this Agreement to Arbitrate. Moreover, neither party can joint a Class Action or participate as a member of a Class Action instituted by someone else in court or in arbitration in order to pursue any claims that are subject to arbitration under this Agreement to Arbitrate. It is the parties' intent to the fullest extent permitted by law to waive any and all rights to the application of Class Action procedures or remedies with respect to all claims subject to this Agreement to Arbitrate. . . . The waiver of Class Action claims and proceedings is an essential and material term of this Agreement to Arbitrate, and The Company and I agree that if it is determined that it is prohibited or invalid under applicable law, then the entire Agreement to Arbitrate is unenforceable.

All issues are for the arbitrator to decide, except that issues relating to arbitrability, the scope or enforceability of this Agreement to Arbitrate, or the validity, enforceability, and interpretation of its prohibitions of class and representative proceedings, shall be for a court of competent jurisdiction to decide.

. . . .

h)     **Voluntary Agreement:** . . . I understand that, by entering into this Agreement to Arbitrate, **I am waiving my right to a jury trial and any right I may have to bring any employment-related claim covered by this agreement as a Class Action (as defined herein) or any class or representative action** (either in court or in arbitration) **or to participate in such an action.**

(Doc. 14-2 at 4-5).

Defendant alleges each Plaintiff signed a valid arbitration agreement as a condition of their employment. Because the claims in Plaintiffs' complaint arise out of their employment, Defendant contends the claims fall within the scope of the arbitration agreement. Accordingly, Defendant asks the Court to stay this matter, compel the individual Plaintiffs to proceed with arbitration, and strike the class allegations based upon the agreement to litigate claims individually.

Plaintiffs Coshira English and Dawn Washington have filed declarations denying they signed agreements to arbitrate. Both Plaintiffs also state that they did not sign any employment-related documents with electronic signatures. Thus, there is a genuine issue of material fact regarding whether English and Washington agreed to arbitrate. *See Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (7th Cir. 2002) (suggesting that, while plaintiff's statement that she does not remember receiving or signing an arbitration agreement does not create a factual dispute, a plaintiff's unequivocal denial that she received or signed an arbitration agreement is sufficient to create a genuine issue of material fact); *see also Kass v. PayPal, Inc.*, 75 F.4th 693, 704 (7th Cir. 2023) ("When a party denies signing a contract, committing a crime, or doing anything else, the denial is an assertion of fact. And far from being conclusory, such a denial can create a genuine issue of fact.").

While there is a factual dispute as to whether Plaintiffs English and Dawn Washington agreed to arbitrate, Plaintiffs Otis Childs and Latessa Lerogan-Washington have not submitted declarations or affidavits regarding whether they signed an agreement to arbitrate. However, Plaintiff Dawn Washington, who worked for Defendant as a store manager in from 2014 or 2015 and as a general manager from May of 2020 until July 2022, stated in her declaration that the employees she hired and onboarded signed all employment-related documents with a wet signature and not electronically. Furthermore, it was not until approximately July 2020 that Defendant began using digital onboarding documents. Given that Childs and Latessa Lerogan-Washington are alleged to have electronically signed the documents agreeing to arbitrate

in May 2020, the Court concludes there is a genuine issue of material fact as to whether any of Plaintiffs agreed to arbitrate.

## III.     CONCLUSION

Based on the current record, the Court concludes there is a factual dispute regarding whether Plaintiffs signed the arbitration agreements. Thus, an evidentiary hearing is necessary to resolve the question of fact. Defendant EYM Chicken of Illinois, LLC's Motion to Dismiss or, In the Alternative, Stay Action and Compel Arbitration [Doc. 13] is DENIED without prejudice to refile following an evidentiary hearing. The Court hereby schedules a status hearing on Monday, March 3, 2025, at 10:30 a.m. for the purpose of scheduling the evidentiary hearing. The status hearing will be by videoconference, the instructions for which are attached.

ENTER: February 11, 2025

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE